UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Limited Life Assets Services Limited,
a private limited company

     Plaintiff,       **MEMORANDUM OPINION
                    AND ORDER**
v.                 Civil No. 12-1532 ADM/FLN

BNC National Bank, a national
banking association, as trustee of the
Herman Leimzider 2007A
Irrevocable Trust, a Minnesota trust,
the Herman Leimzider 2007B
Irrevocable Trust, a Minnesota trust,
Herman Leimzider 2007C Irrevocable
Trust, a Minnesota trust,

     Defendant.

_____

Tim P. Griffin, Esq., Leonard Street and Deinard, PA, Minneapolis, MN, on behalf of Plaintiff.

Randy G. Gullickson, Esq., Anthony Ostlund Baer & Louwagie PA, Minneapolis, MN, on behalf of Defendant.

_____

## I. INTRODUCTION

On September 5, 2012, the undersigned United States District Judge heard oral argument on Defendant BNC National Bank's ("BNC") Motion to Dismiss and to Compel Arbitration, or Alternatively, to Stay Litigation Pending Arbitration [Docket No. 5]. For the reasons discussed below, Defendant's Motion is granted in part and denied in part.

## II. BACKGROUND

Plaintiff Limited Life Assets Services ("Limited Life") bought a lender's interest in loans used to finance three Trusts—the Herman Leimzider 2007A Irrevocable Trust, the Herman Leimzider 2007B Irrevocable Trust, and the Herman Leimzider 2007C Irrevocable Trust

(collectively, "the Trusts").  Compl. ¶¶ 7–8.  Each Trust purchased an insurance policy on the life of Herman Leimzider.  Id.  Defendant BNC is the trustee.  Id.  Limited Life claims that the Trusts defaulted on the loans; Limited Life then held a public sale, made the only bid, and bought the insurance policies.  Compl. ¶¶ 13–40.  Limited Life claims it owns all rights, title and interest in each of the policies and that BNC has a contractual obligation to sign over the title.  Compl. ¶¶ 41–42.

BNC argues the dispute falls under the broad arbitration clause in each of the three Term Financing Facility Agreements ("TFFA").  Def.'s Mem. in Supp. of Mot. to Dismiss [Docket No. 9].  Limited Life cites provisions in the Control Agreements and similar language in the Pledge and Security Agreements as controlling the issue of title possession.  Pl.'s Mem. in Opp'n. to Mot. to Dismiss [Docket No. 15].  Limited Life also asserts that its request for specific performance is an equitable remedy not covered by the arbitration clause and that the arbitration clause specifically contemplates interim relief be decided by the Court.  Id.

The TFFA includes a definition and terms section, Section 1.1, which in relevant part defines "Control Agreement" as "the Control Agreement among the Borrower, the Lender and the Securities Intermediary named therein, a copy of which is attached hereto as Exhibit H."  Harman Decl. in Supp. of Mem. in Supp. of Mot. to Dismiss [Docket 10] Exhibit 1 ("TFFA").  The Pledge Agreement, referring to the Borrower Pledge and Security Agreement is similarly defined in this section as "attached hereto as Exhibit C."  Id.  If there is confusion about the word "Agreement" in Term Financing Facility Agreement, as well as in the Control and Pledge Agreements, the construction of the contract makes clear that the Control and Pledge Agreements are exhibits, part of the larger TFFA.

The TFFA also includes a choice of law provision, Section 11.8, entitled, "Governing

Law, Jurisdiction, Etc." Section 11.8 provides,

> This Agreement shall in all respects be governed by, and construed in accordance with, the internal laws of the State of Minnesota, including all matters of construction, validity and performance, without regard to the principles of the conflict or choice of laws.  Each of the parties hereto hereby consents and agrees that the State or Federal courts located in Minnesota shall have exclusive jurisdiction to enforce arbitral awards and to hear and determine any claims to obtain equitable relief pertaining to this Agreement or to any matter arising out of or relating to this Agreement. . . .

The TFFA's arbitration clause follows in Section 11.10(a), providing,

> Any dispute, controversy or claim arising out of, relating to, in connection with or in respect of this Agreement, including any question regrading its existence, validity, interpretation, breach or termination (a "Dispute"), shall be finally resolved by arbitration under the Commercial Arbitration Rules of the American Arbitration Association, which Rules are deemed to be incorporated by reference into this Section 11.10.

The arbitration clause adds in Section 11.10 (f), "Nothing in these dispute resolution provisions shall be construed as preventing either party from seeking conservatory, equitable or similar interim relief in any court of competent jurisdiction."

As mentioned in the definitions section of the TFFA, the Control Agreement is attached to the TFFA as Exhibit H ("Control Agreement").  The TFFA does not have an arbitration clause in the Control Agreement, but it does reemphasize in its Section 13 the choice of law consideration: "This Agreement and the rights and obligations of the parties under this Agreement shall be governed by, and construed and interpreted in accordance with, the laws of the State of Minnesota."  TFFA Exhibit C is the "Borrower Pledge and Security Agreement" ((Pledge Agreement").  The Pledge Agreement's Section 13.2  choice of law language is identical to that in the main TFFA Section 11.8.  The Control Agreement also includes a "Waiver of Jury Trial" clause in Section 14.  In all capitalized type the section provides, "Each of the Parties hereto irrevocably submits to the exclusive jurisdiction of any federal or state court

3

sitting in the County of Hennepin and State of Minnesota in respect of [sic] any action or proceeding arising out of or in connection with this agreement...." Id.

### III.  DISCUSSION

The pivotal issue is whether the parties have agreed to submit this dispute to arbitration. If so, the Federal Arbitration Act ("FAA") directs the Court to compel arbitration and either dismiss or stay this action.  9 U.S.C. §§ 1–16.

**A. Arbitration**

The FAA instructs district courts to order arbitration when a contract dispute falls within the scope of a valid arbitration clause.  9 U.S.C. §§ 2–4.  "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  Newspaper Guild of St. Louis, Local 36047 v. St. Louis Post Dispatch, LLC, 641 F.3d 263, 266 (8th Cir. 2011) (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)).  Generally, "there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  AT & T Tech., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986) (citation and quotation omitted).  This presumption reflects a "federal policy favoring arbitration."  Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987) (citation and quotation omitted).  Enforcement of an arbitration policy occurs by means of a motion to compel arbitration.  9 U.S.C. § 4.

**B.  Scope of Arbitration**

Limited Life raises two main arguments.  First, Limited Life argues the TFFA arbitration

clause does not govern the Control Agreement or the Pledge Agreement because those Agreements are separate and independent.  Second, Limited Life contends that even if the Control Agreement and Pledge Agreement are subsidiary, the control of title for the insurance policies at issue is outside the scope of the arbitration clause.  Both are issues of scope.

The U.S. Court of Appeals for the Eighth Circuit has analyzed the scope question, ruling that broad arbitration clauses can encompass disputes that "simply touch matters covered by the arbitration clause."  3M Co. v. Amtex Sec., Inc., 542 F.3d 1193, 1199 (8th Cir. 2008); see also, PRM Energy Sys., Inc. v. Primenergy, L.L.C., 592 F.3d 830, 836-37 (8th Cir. 2010) (finding "all disputes arising under" language encompasses even claims that sound in tort rather than contract); and CD Partners, LLC v. Grizzle, 424 F.3d 795, 800 (8th Cir. 2005) (finding tort disputes with non-signatories "arising out of or relating to" the contract is arbitrable).

**1.  Broad Arbitration Language**

Examining the language and construction of the contract, on its face, resolves the first question of scope.  The TFFA includes broad arbitration clause language:  "Any dispute, controversy or claim arising out of, relating to, in connection with or in respect of this Agreement, including any question regarding its existence, validity, interpretation, breach or termination (a "Dispute"), shall be finally resolved by arbitration."  TFFA §11.10.  The Eighth Circuit has interpreted similar broad language to compel arbitration even if the dispute "simply touch[es] matters covered by the Arbitration clause."  3M Co., 592 F.3d at 836-37.  Attached to the TFFA are "exhibits," including the Control Agreement and the Pledge Agreement.  TFFA pg. iii.  These exhibits further the facilitation of the TFFA and are not independent of the TFFA.  Id. Since there is no language in the subsidiary agreements to the contrary, the TFFA's arbitration clause covers the disputes that may arise out of them and a dispute about title of the insurance

5

policies clearly arises out of this contract dispute.

Limited Life argues that language in the Control Agreement becomes superfluous if the Court reads the arbitration clause this broadly, but upon close examination, none of the language in the Control Agreement contradicts the arbitration clause. Limited Life's cites language from the "Governing law" section, which addresses choice of law, rather than venue. Control Agreement §13. The TFFA arbitration clause plainly states the parties preferred the venue of arbitration for settling their disputes; and, the governing law clauses suggest to the arbitrator the parties' choice of law. Cf. UHC Mgmt. Co. v. Computer Sciences Corp., 148 F.3d 992 (8th Cir. 1998). Limited Life also cites language in sections of both subsidiary agreements that concern "waiver of jury trial," arguing that the Trusts agreed to submit to the jurisdiction of Minnesota courts. Mem. in Opp'n at 6, 10-11. As with the "Governing Law" section, the jury trial sections do not contradict the arbitration clause. Control Agreement § 14.

Even if these sections cause confusion about the arbitration clause, the federal policy favoring arbitration would cause this court to err on the side of arbitration. Medcam, Inc. v. MCNC, 414 F.3d 972, 975 (8th Cir. 2005) (finding "order compelling arbitration should not be denied unless it may be said with positive assurance that the arbitration is not susceptible of an interpretation that covers the asserted dispute"). TFFA's arbitration clause covers a dispute about title of insurance policies. The insurance policies are the object of the contract and disputes about ownership arise out the contract. To the extent that the Control Agreement and Pledge Agreements confuse the contract, the Court finds the federal policy favoring arbitration easily embraces this dispute.

**2. Specific Performance**

As its second argument, Limited Life argues that Section 11.10 (f) removes claims for

specific performance from the scope of this arbitration clause. Although TFFA Section 11.10(f) provides "[n]othing in these dispute resolution provisions shall be construed as preventing either party from seeking conservatory, equitable or similar interim relief in any court of competent jurisdiction," Limited Life's interpretation of this language causes conflict with the intent of arbitration clauses. Granting specific performance would require the Court to examine the underlying merits of the claim, the merits of whether Limited Life properly foreclosed on the BNC Trusts.

Limited Life argues based on Minnesota law that the question of whether a claim is legal or equitable depends on "the substance of the claim, based on the pleadings and the underlying elements of the claim, and the nature of the relief sought." United Prairie Bank-Mountain Lake v. Haugen Nutrition & Equip., LLC, 813 N.W.2d 49, 54 (Minn. 2012). But the reliance on this case is unhelpful and out of context. The case is unhelpful to Limited Life because it identifies the major problem—this Court would need to examine the "substance of the claim" to decide the appropriateness of the specific performance remedy. Medcam, 414 F.3d at 975 (finding the question of scope goes to whether the parties have agreed to arbitrate a particular claim, not to the potential merits of that claim). In the context of arbitration clauses, an allowance for interim or equitable relief is not concerned with the substance of a party's claim, but with the possibility of "irreparable harm" to a party if the arbitration process is allowed to move forward. Local Union No. 884, United Rubber, Cork, Linoleum & Plastic Workers v. Bridgestone/Firestone, 61 F.3d 1347, 1354-1356 (8th Cir. 1995) (finding the claimed injury "must be irreparable and must threaten the integrity of the arbitration process itself."). When a court grants equitable or interim relief from an arbitration clause, the goal is to maintain parties' status quo position while the arbitration is pending. Id. Limited Life has not argued irreparable harm. To the extent that

Section 11.10(f) sows confusion, this court follows the example set in 3M Co., 542 F.3d at 1199-1200, and finds that the broad scope of the arbitration clause embraces this dispute.

As a practical matter ruling on the merits of the control of title is not in the interest of judicial economy.  Contracting Nw, Inc. v. Fredericksburg, 713 F.2d 382, 387 (8th Cir. 1983) (finding "considerations of judicial economy and avoidance of confusion" make staying the entire action pending arbitration favorable).  The FAA provides, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . ." 9 U.S.C. §3.  Having found a valid arbitration clause that covers the dispute between the parties, the Court will compel arbitration and stay litigation pending that arbitration.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant BNC National Bank's Motion to Dismiss and to Compel Arbitration, or Alternatively, to Stay Litigation Pending Arbitration [Docket No. 5] is **GRANTED in part and DENIED in part**.

    1. Motion to Compel Arbitration is **GRANTED**; and

    2. Motion to Stay Litigation Pending Arbitration is **GRANTED**; and

    3. Motion to Dismiss is **DENIED**.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  October 15, 2012.